IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WELLS FAGO BANK, | ) | |
|---|---|---|
| NATIONAL ASSOCIATION, | ) | |
| | ) | CIVIL ACTION NO. 3:17-cv-159 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| YOUSEF AKANAN and | ) | |
| HATEM AKANAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM ORDER

I. **Introduction**

Pending before the Court is the Motion for Summary Judgment (ECF No. 25) of Plaintiff Wells Fargo Bank, National Association ("Wells Fargo"). Wells Fargo briefed this motion. (ECF No. 25, Ex. 2.) Yousef Akanan ("Yousef") and Hatem Akanan ("Hatem") (collectively, "Defendants") did not file a response to Wells Fargo's motion.

II. **Jurisdiction and Venue**

The Court has subject-matter jurisdiction over this dispute under 28 U.S.C. § 1332. Wells Fargo is a citizen of South Dakota. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that "a national bank is a citizen of the State in which its main office . . . is located" for purposes of diversity jurisdiction).

Yousef is a citizen of either Texas or New York, while Hatem is a citizen of Pennsylvania. (ECF No. 1 at 2.) Thus, there is complete diversity among the parties. Additionally, the amount in controversy exceeds $75,000. (*Id.* at 3.)

Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts giving rise to this suit occurred in the Western District of Pennsylvania.

**III.    Background**

Defendants Hatem and Yousef Akanan are brothers. (ECF No. 25 ¶ 1.) Both Yousef and Hatem maintained consumer banking accounts through Wells Fargo—Yousef maintained checking and savings accounts while Hatem maintained a checking account. (*Id.* at ¶¶ 1-2.)

This case arises from Defendants' banking activities at Wells Fargo.  In October of 2016, Defendants undertook a series of transfers using their Wells Fargo accounts that resulted in Defendants improperly obtaining $100,000 at Wells Fargo's expense.  To carry out this scheme, Yousef first sent Hatem blank checks linked to Yousef's Wells Fargo checking account. (*Id.* at ¶ 2.)  Then, Yousef directed Hatem to transfer $97,100 from Yousef's Wells Fargo savings account into Yousef's Wells Fargo checking account. (*Id.*) Yousef then directed Hatem to transfer $100,000 from Yousef's Wells Fargo checking account into Hatem's Wells Fargo checking account via check. (*Id.*)  Yousef further directed Hatem to withdraw the cash from Hatem's Wells Fargo checking account and deposit it into an account with another bank. (*Id.*)

Hatem followed each of these orders while posing as Yousef. (*Id.* at ¶¶ 4-7.) Specifically, Hatem took the following actions on November 21, 2016:

1. Transferred $97,100 from Yousef's savings account to Yousef's checking account via telephone, all the while purporting to be Yousef;

2. Wrote a check for $100,000 from Yousef's checking account made payable to Hatem, and signed Yousef's name on the check;

3. Presented the $100,000 check to Wells Fargo—depositing $90,000 into his own Wells Fargo checking account and withdrawing $10,000 in cash;

4. Wrote a check for $85,000 from his own Wells Fargo checking account payable to himself when the $90,000 deposit became available; and then

5. Deposited the check for $85,000 into a checking account with First National Bank.

(*Id.*)

This series of events had the effect of transferring $100,000 from Yousef's Wells Fargo checking account to Hatem.

After Hatem obtained the $100,000 from Yousef's account, Yousef filed a signed and notarized Affidavit of Check Fraud with Wells Fargo, alleging that Hatem stole Yousef's checks and forged Yousef's signature on the check. (*See id.* at ¶¶ 11-12; Ex. 4.) Upon receiving the affidavit, Wells Fargo debited $100,000 to Hatem's Wells Fargo checking account and credited $100,000 to Yousef's Wells Fargo checking account. (*Id.* at ¶ 14.)

After Wells Fargo received the affidavit and credited $100,000 to Yousef's account, Yousef wrote a letter to Wells Fargo stating that when he submitted the Affidavit of Check Fraud, he had forgotten that he gave his brother Hatem authorization to withdraw funds from Yousef's checking account. (*Id.* at ¶ 17; Ex. 4.) Wells Fargo demanded that Yousef return the misappropriated $100,000, but no money was ever returned. (*Id.* at ¶¶ 18-19.)

Wells Fargo initiated this action on August 30, 2017. (*See* ECF No. 1.) Wells Fargo brought claims against Defendants under Pennsylvania law for breach of presentment

warranties and unjust enrichment. (*See id.* at 4-6.)   Hatem filed a pro se answer (*See* ECF No. 5), participated in discovery, and participated in an unsuccessful mediation. (*See* ECF No. 23.)

Hatem contacted Plaintiff's counsel before an August 3, 2018, post-discovery status conference and stated that he was in Jordan and lacked access to modern technology. (*See* ECF No. 26.)

Wells Fargo filed the instant motion for summary judgment on July 23, 2018. (ECF No. 25.) Defendants did not file a response.

## IV. Legal Standard

"Summary judgment is appropriate only where . . . there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 380 n. 6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005). Material facts are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this

determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir.2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading, but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n. 11, (1986)). "For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir.1993); *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (noting that a party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue.") (internal quotation marks omitted).

## V.  Analysis

Wells Fargo alleges that Defendants breached presentment warranties under the Pennsylvania Commercial Code. *See* 13 PA. CONS. STAT. § 3417. Under § 3417, every

person that obtains payment on a written instrument makes certain warranties regarding the authenticity and enforceability of the written instrument. Specifically, § 3417(a) provides that:

> [i]f an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, the person obtaining payment or acceptance, at the time of presentment, and a previous transferor of the draft, at the time of transfer, warrant to the drawee making payment or accepting the draft in good faith that:
>
> (1) the warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft;
>
> (2) the draft has not been altered; and
>
> (3) the warrantor has no knowledge that the signature of the drawer of the draft is unauthorized.

§ 3417(a).

If a person obtains payment on a written instrument in violation of § 3417(a), the drawee-payor (Wells Fargo here) is entitled to recover "for breach of warranty equal to the amount paid by the drawee less the amount the drawee received or is entitled to receive from the drawer because of the payment." § 3417(b). Additionally, the drawee is entitled to compensation for expenses "and loss of interest resulting from the breach." *Id.*

The plain language of § 3417(a) indicates that Wells Fargo is entitled to judgment as a matter of law. By presenting the $100,000 check to Wells Fargo, Hatem warranted to Wells Fargo under § 3417(a) that he presented the check in good faith, that he was

authorized to obtain payment on the check, and that he had no knowledge that the signature on the check was unauthorized or improper.

There is no genuine dispute that Hatem presented the check to Wells Fargo in bad faith and in violation of the § 3417(a) presentment warranties. In his deposition, Hatem admitted that he posed as his brother Yousef when he made the series of transfers, withdrawals, and presentments on November 21, 2016. (ECF No. 25, Ex. 3 at 62-63, 97-98.) Hatem admitted that he forged Yousef's signature on the check. (*Id.* at 42.) Hatem further admitted that when he signed and cashed the check for $100,000 in his own bank account, he was aware that Yousef intended to fraudulently induce Wells Fargo to return the $100,000 to Yousef's account by filing the Affidavit of Check Fraud. (*Id.* at 52:8-11.) These circumstances unambiguously establish that Defendants acted in bad faith and breached the presentment warranties.

Because there is no genuine dispute of material fact that Defendants breached the § 3417(a) presentment warranties, Wells Fargo is entitled to damages under § 3417(b) as a matter of law.

## VI. Conclusion

For the reasons stated above, the Court finds there is no genuine dispute of material fact that Defendants breached the presentment warranties in § 3417(a), and therefore that Wells Fargo is entitled to damages under § 3417(b) as a matter of law. Accordingly, the Court **GRANTS** Wells Fargo's motion for summary judgment.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| WELLS FAGO BANK, | ) | |
|---|---|---|
| NATIONAL ASSOCIATION, | ) | |
| | ) | CIVIL ACTION NO. 3:17-cv-159 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| YOUSEF AKANAN and | ) | |
| HATEM AKANAN, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 12th day of September 2018, upon consideration of Plaintiff's Motion for Summary Judgment (ECF No. 25) and for the reasons set forth in the memorandum opinion accompanying this order, it is HEREBY ORDERED that Plaintiff's Motion for Summary Judgment is **GRANTED**.

BY THE COURT:

_____
KIM R. GIBSON
UNITED STATES DISTRICT JUDGE